UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Leslie Jerome Harmon, et al.,<br><br>    Plaintiffs,<br><br>-against-<br><br><br>Timothy Zachary (Zedd) Mosley, et al.,<br><br>    Defendants. | 23-CV-04225 (JHR) (RFT)<br><br>**ORDER REGARDING MOTION FOR RECONSIDERATION** |

**ROBYN F. TARNOFSKY, United States Magistrate Judge:**

  Pending before me is Plaintiffs' motion for reconsideration of my order of September 11, 2024, which granted Defendants' and Relief Defendants' motion for a protective order (ECF64) and denied Plaintiff's cross-motion to compel discovery (ECF 71).[1] (*See* ECF 86, Recons. Mot.; ECF 87, Memo. in Supp. of Recons. Mot.; ECF 90, Am. Memo. in Supp. of Recons. Mot.) I have carefully considered Plaintiffs' submissions as well as Defendants' and Relief Defendants' opposition (ECF 96, Memo. in Opp'n to Recons. Mot.), and for the reasons set forth below, the reconsideration motion is **DENIED**.

<u>BACKGROUND</u>

**I.  The Complaint**

  On May 22, 2023, Plaintiffs filed their complaint against Defendants (the "Complaint"), alleging claims for breach of contract, unjust enrichment, conversion, breach of the implied

---

[1]  Plaintiffs name as Defendants Timothy Zachary ("Zedd") Mosley, Timbaland Productions, Inc., Timbaland Productions, Mosley Music Group, and Mono Music Group. The Complaint also discusses "Relief Defendants," which consist of Hipgnosis Songs Fund Ltd., Hipgnosis Songs Group, Hipgnosis Songs Group, LLC, and Hipgnosis Funds.

covenant of good faith and fair dealing, and breach of fiduciary duty, and seeking a declaratory judgment that Defendants breached contracts between them and Plaintiffs, an injunction preventing Relief Defendants from distributing any royalties until the obligations owed to Plaintiffs have been met, imposition of a constructive trust on property in Relief Defendants' possession that is traceable to Defendants' wrongful acts, and an accounting. (*See generally* ECF 1, Compl.) The claims arise out of (1) a contract between Plaintiffs and Defendants that was amended by written agreement on April 11, 2013 (the "Mosley-Harmon Contract"), and (2) a settlement agreement from August 2020 between Plaintiffs and Defendants (the "Settlement Agreement"), which partially resolved a dispute over Defendants' failure to account and pay royalties to Plaintiffs for musical services performed by Plaintiffs for Defendants on certain musical recordings beginning in 2007 (the "Recordings"), as required by the Mosley-Harmon Contract. (*See id.* ¶¶ 35-39.) Defendants transferred their interests in the Recordings, as well as in other recordings, to a corporate affiliate of Relief Defendants in or around 2019 (the "Transfer"). (*See* ECF 66, Memo. in Supp. of Mot. for Protective Order at 2.)

## II. The Motion for a Protective Order and Cross-Motion To Compel

On August 16, 2024, Defendants and Relief Defendants filed a motion for a protective order, seeking to prevent Plaintiffs from obtaining discovery about the Transfer. (*See* ECF 64, Mot. for Protective Order; ECF 65, Decl. in Supp. of Mot. for Protective Order; ECF 66, Memo. in Supp. of Mot. for Protective Order.) Defendants and Relief Defendants argued that the "sole issue in the action is whether Plaintiffs are currently due and owed any royalties under the Settlement Agreement, and if so, how much," which can be resolved only "by obtaining and analyzing royalty statements created and maintained by third-party record labels." (ECF 66,

Memo. in Supp. of Mot. for Protective Order at 1-2.) Defendants and Relief Defendants took the position that the documents about the Transfer are irrelevant to the claims in the Complaint, particularly because the Mosley-Harmon Contract provides that Defendants may sell their interests in the Recordings at their sole discretion. (*See id.* at 5.) Defendants and Relief Defendants concluded that requiring them to produce documents relating to the Transfer would be disproportionate to the needs of the case. (*See id.* at 2-3.)

On August 23, 2024, Plaintiffs filed a memorandum of law in opposition to the motion for a protective order (ECF 68), supported by two declarations (ECF 69, 70), as well as a cross motion to compel the discovery at issue in the motion for a protective order (ECF 71); Plaintiffs' cross-motion was supported by two declarations (ECF 73, 74), as well as a memorandum of law (ECF 72). Plaintiffs argued that they are "owed semi-annual royalty accounting statements and payment of any royalties due," and that "[i]t appears from the facts of the Hipgnosis sale that Timbaland has tortiously converted J-ROC's royalties and assets, without notice or granting J-ROC the opportunity to protect his royalty stream . . . by virtue of Timbaland's sale of the entire royalty stream and all attendant administration rights to Hipgnosis." (ECF 68, Memo. of Law in Opp'n to Mot. for Protective Order at 6-7.) Plaintiffs contended that the sale to Hipgnosis deprived them of their right to receive accountings, their right to receive payment, and their right to sell their portion of the royalty stream to a third party. (*See id.* at 7.) Plaintiffs also took the position that, in light of Defendants' assertion that they could not obtain the record company royalty statements needed to determine the amounts, if any, owed to Plaintiffs, the only way to assess those amounts owed would be through an analysis of the price paid by

3

Hipgnosis for Defendants' interests in the Recordings and "Hipgnosis' almost certain detailed pre-sale valuation of the songs." (*Id.*)

I held a conference on September 11, 2024, at which the parties addressed this discovery dispute as well as other discovery-related matters. The conference lasted approximately 53 minutes, and Plaintiffs had ample opportunity, after I indicated an intention to grant the protective order, to make their arguments why I should not do so and why I should instead grant their cross-motion to compel discovery. After the parties made their arguments, I ruled that the extremely broad discovery being sought by Plaintiffs was not relevant to the claims in the Complaint and was not proportional to the needs of the case. (*See* ECF 92, Tr. at 25:11-17.) My text order stated, in relevant part, "[f]or the reasons stated on the record and set forth in Defendants' papers in support of their motion for a protective order (ECF 64), the motion for a protective order is GRANTED."

### III.     The Motions for Reconsideration and To Vacate

On September 25, 2024, Plaintiffs filed a motion for reconsideration (ECF 86) of my September 11 order, supported by a memorandum of law (ECF 87). On the same day, Plaintiffs filed a motion to vacate (ECF 88) my September 11 order, supported by a memorandum of law (ECF 89), as well as amended memoranda of law in support of the motion for reconsideration (ECF 90) and to vacate (ECF 91).

In support of their reconsideration motion, Plaintiffs argue that my September 11 order is "clearly erroneous or contrary to law." (ECF 90, Am. Memo. in Supp. of Recons. Mot. at 7-8.) They contend that discovery concerning the Transfer is relevant to the following questions:

1. Did Mosley disclose to Hipgnosis his accounting and payment obligations to Plaintiff Harmon and if so, did Hipgnosis assume those obligations;

4

2. What were the representations and warranties Mosley made to Hipgnosis in the written document and how do they affect Harmon's rights?
3. Did Mosley retain the obligation to account and then pay Harmon and if so on what basis?
4. Did Hipgnosis assume the duty to account and then pay Harmon?
5. What portion of his producer income stream did Mosley sell to Hipgnosis, and did it include all of Harmon's share;
6. How much did Mosley get from Hipgnosis and how was it allocated among the songs Harmon co-produced and ones he had no part in?
7. Did Hipgnosis do any due diligence as to Mosley's obligations to Harmon and if so, what was the intention between Mosley and Hipgnosis in that regard?
8. Did the agreement between Hipgnosis and Mosley provide for a manner for Mosley to have information necessary to account to Harmon going forward and if now [sic] why not?

(*Id.* at 2.) Plaintiffs insist that the sale contract itself, as well as correspondence about the sale, would shed light on these questions, and that the discovery sought would also be relevant to the valuation of Harmon's royalty interests. (*See id.*)

Plaintiffs go on to argue that I misapprehended the burden of proof in connection with determining the royalty amounts owed to them, which they contend led to errors in my analysis of the motion for a protective order and the cross-motion to compel (*see id.* at 8-9); that Defendants' counsel opened the door to discovery through his declaration in support of the protective order (*see id.* at 9); and that Defendants and Relief Defendants failed to demonstrate that the materials sought were either confidential or would be burdensome to produce (*see id.* at 10).

On October 2, 2024, Defendants and Relief Defendants filed a memorandum of law in opposition to the motion for reconsideration (ECF 96) and a memorandum of law in opposition to the motion to vacate (ECF 97). Defendants and Relief Defendants argue that, while motions

5

for reconsideration may be granted when the court overlooked a controlling decision or other information, such motions should not be granted when the movants seek to relitigate an issue that was previously decided – which, Defendants and Relief Defendants contend, is what Plaintiffs here seek to do. (*See* ECF 96, Memo. in Opp'n to Recons. Mot. at 7-8.)

Defendants and Relief Defendants then explain why they believe the discovery sought by Plaintiffs is not relevant to this case. They assert that the Harmon-Mosley Contract makes clear that Plaintiffs may be entitled to certain royalty payments based on a formula, but that Plaintiffs have no interest in the underlying Recordings. (*See id.* at 8-9.) They respond Plaintiffs' arguments about why the discovery sought is relevant, pointing out that they do not dispute that Defendants are obligated to make all royalty payments due under the formula. (*See id.* at 10-12.) They point out that I did not misapprehend which parties bear the burden of demonstrating an entitlement to royalties when I declined to extend the discovery deadline to the extent requested by Plaintiffs in light of Plaintiffs' decision not to seek production of royalty statements from third parties until a month before the discovery deadline. (*See id.* at 12-13.) And they explain that they had no obligation to demonstrate that complying with Plaintiffs' discovery requests would be burdensome, because Plaintiffs failed to show that the discovery sought was relevant. (*See id.* at 13-14.)

On November 12, 2024, Plaintiffs requested that the motion to vacate be stayed or held in abeyance pending my determination of their reconsideration motion. (*See* ECF 121, 122.)

### LEGAL STANDARD FOR A RECONSIDERATION MOTION

Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Rule 6.3 govern reconsideration motions. Reconsideration is "an extraordinary remedy to be employed

6

sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000).[2] These rules aim to prevent a losing party from "plugging the gaps of a lost motion with additional maters." *S.E.C. v. Ashbury Cap. Partners, L.P.*, No. 00-CV-7898 (RCC), 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001). Courts must "narrowly construe and strictly apply Local Rule 6.3, so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for appealing a final judgment." *Schoolcraft v. City of New York*, 298 F.R.D. 134, 137 (S.D.N.Y. 2014).

The Second Circuit has therefore held that the standard for granting a reconsideration motion "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration is justified where the moving party demonstrates "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Henderson v. Metro. Bank & Tr. Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007). A motion for reconsideration should be denied "where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257; *see also Delgado v. Donald J. Trump for President, Inc.,* No. 19-CV-11764 (AT) (KHP), 2024 WL 2882095, at *1 (S.D.N.Y. June 7, 2024) (denying motion for reconsideration of discovery order).

---

[2] Unless indicated otherwise, internal quotation marks and citations are omitted.

**DISCUSSION**

Plaintiffs' reconsideration motion rehashes matters that I considered and ruled on in connection with the motion for a protective order and cross-motion to compel. In deciding those motions, I concluded that Plaintiffs had not shown that the extremely broad discovery sought by Plaintiffs about the Transfer was relevant to their claims in this case. Plaintiffs' recycled arguments do not convince me that my relevance assessment was contrary to law.

While "[t]he scope of relevance under Rule 26 is broader than under the Federal Rules of Evidence," such that "parties can obtain information in discovery that is not necessarily admissible at trial," the scope is not unlimited. *Kaiser Aluminum Warrick, LLC v. U.S Magnesium, LLC,* No. 22-CV-3105 (JGK) (KHP), 2023 WL 2024620, at *1 (S.D.N.Y. Feb. 15, 2023) (denying discovery of the defendant's financial condition in a breach of contract case in which the defendant interposed a force majeure defense because "financial difficulties do not typically justify invocation of force majeure"). Moreover, "[t]he party seeking discovery bears the burden of initially showing relevance." *Mandell v. The Maxon Co., Inc.*, No. 06-CV-0460 (RWS), 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007).

The core question in this lawsuit is whether and if so to what extent Defendants owe royalty payments to Plaintiffs. Information about the Transfer is not relevant to that question, because the Transfer does not affect Plaintiffs' entitlement to any such payments and Defendants' obligation to make any such payments. Plaintiffs' list of questions intended to demonstrate how the Transfer could be relevant to the issues in this case is unavailing. The questions are largely premised on counsel's speculation about possible bad acts by Defendants, which does not support a conclusion that the requested discovery is relevant. *See, e.g., MG*

*Freesites Ltd. v. Scorpcast, LLC*, No. 22-MC-361 (PAE), 2023 WL 2822272, at *5 (S.D.N.Y. Apr. 7, 2023) (declining to order discovery when the movant postulated that "there might be some alternative explanation" for the terminated business relationship that could be relevant to the litigation, finding that the argument was "entirely speculative" and therefore provided "no concrete basis on which to find such discovery [was] relevant to any claim or defense"); *In re Al-Attabi*, No. 21-MC-207 (VSB) (RWL), 2022 WL 229784, at *10 (S.D.N.Y. Jan. 26, 2022) (declining to require production of communications where the movant suggested that the communications might be relevant because they could reflect interference with the movant's discovery efforts, finding that the discovery request was "speculative and the type of fishing expedition that U.S. discovery rules do not condone"), *appeal dismissed sub nom. Al-Attabi v. Bank Audi S.A.L.*, No. 22-524, 2022 WL 2116043 (2d Cir. May 9, 2022).

      Additionally, even if Plaintiffs' speculation were to be borne out, discovery about the Transfer would still not be relevant to the claims in this matter. Plaintiffs suggest that Defendants may not have disclosed to Relief Defendants the accounting and payment obligations owed by Defendants to Plaintiffs, may not have retained those obligations, may not have ensured a way for Defendants to meet those obligations, may have sold the producer income streams from which the royalty payments are derived, and may have made representations and warranties to Relief Defendants about Plaintiffs' rights, and that Relief Defendants may not have done due diligence on Defendants' obligations to Plaintiffs. However, Defendants have never disputed their obligations to account and pay royalties to Plaintiffs. In the absence of any argument by Defendants that they need not meet their accounting and payment obligations to Plaintiffs, the questions whether Defendants disclosed those obligations

to Relief Defendants and whether Relief Defendants performed due diligence on those obligations are not relevant to Plaintiffs' claims. Similarly, Defendants will have to find a way to meet their obligations or compensate Plaintiffs for any failure to do so, notwithstanding the sale of the producer income streams, and so discovery into the procedures Defendants may have put in place to meet those obligations is not relevant to Plaintiffs' claims.

Plaintiffs' contention that information about the purchase price in connection with the Transfer is relevant due to Defendants' and Relief Defendants' failures to produce the necessary royalty statements also falls short of showing the relevance to the amount of royalties owed to Plaintiffs of the amount of compensation Defendants received in connection with the Transfer. After the filing of the motion and cross-motion, third parties produced the relevant royalty statements, which will allow the parties to compute the royalties, if any, owed to Plaintiffs. The compensation paid in connection with the Transfer included recordings other than the Recordings, and Plaintiffs have provided no factual basis for their assertion that there must have been a recording-by-recording valuation of the Recordings in connection with the Transfer (*see* ECF 68, Memo. of Law in Opp'n to Mot. for Protective Order at 7.) As such, Plaintiffs have not established that the purchase price in connection with the Transfer is relevant to their claims or damages.

Plaintiffs' other arguments are similarly unpersuasive. My conclusion that the materials sought are irrelevant to Plaintiffs' claims was not based on a misapprehension about the burden of proof at trial. I made that determination based on the nature of Plaintiffs' claims and the discovery sought. To support their argument that I misunderstood the burden, which led me to incorrectly decide the relevance question, Plaintiffs take out of context my explanation

why I declined to grant a long extension of the discovery deadlines. (*See* ECF 90, Memo. in Supp. of Recons. Mot. at 7-8.) In declining to grant the full requested extension, I pointed out that Plaintiffs' position that they needed the additional time because of third parties' production delays was a problem of Plaintiffs' own making, because Plaintiffs had waited to seek royalty statements from third parties until a month before the original discovery deadline. (*See* ECF 92, Tr. at 30:19-31:1.) Plaintiffs responded that it was Defendants' obligation to make the royalty statements available. (*See id.* at 31:3-9.) I explained that Plaintiffs still should have sought the production sooner: notwithstanding Defendants' obligation to provide those materials, given Defendants' failure to meet that responsibility, Plaintiffs could not simply sit on their hands and then expect me to grant a significant extension of the discovery schedule. (*See id.* at 32:2-7.)

And Plaintiffs' insistence that there was insufficient good cause to issue a protective order, because Defendants and Relief Defendants had failed to demonstrate that the discovery sought was confidential and that production would cause a clearly defined and serious injury ignores that "the party seeking discovery bears the burden of initially showing relevance." *Mandell*, 2007 WL 3022552, at *1. Plaintiffs here did not meet that initial burden, and so Defendants and Relief Defendants had no obligation to make the demonstration demanded by Plaintiffs.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs have not met the high bar for granting the extraordinary remedy of reconsideration. Plaintiffs' request for reconsideration is **DENIED**. The Clerk of Court is respectfully requested to terminate ECF 86.

DATED:  November 21, 2024
            New York, NY

SO ORDERED.

_____
**ROBYN F. TARNOFSKY**
United States Magistrate Judge