UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Leslie Jerome Harmon, et al.,<br><br>                Plaintiffs,<br><br>-against-<br><br><br>Timothy Zachary (Zedd) Mosley, et al.,<br><br>                Defendants. | 23-CV-04225 (JHR) (RFT)<br><br>**REPORT & RECOMMENDATION** |

**TO THE HONORABLE JENNIFER H. REARDEN, United States District Judge:**

       Pending before the Court is Plaintiffs' motion to amend their complaint (ECF 1) to (1) add Hipgnosis SFH Limited ("Hipgnosis SFH") as a defendant and (2) add claims of (a) fraudulent inducement against Defendants Timothy Zachary (Zedd) Mosley p/k/a Timbaland, Timbaland Productions Inc., Timbaland Productions, TImbaland Music, Mosley Music Group Inc., and Mono Music Group (together, the "Mosley Defendants"), and (b) gross negligence against Hipgnosis SFH. (*See* ECF 177. Mot. To Amend.)[1] I have carefully considered the parties' submissions, and for the reasons set forth below, I respectfully recommend that the motion to amend be **DENIED**.[2]

---

[1]     The Complaint names the Mosley Defendants and also discusses "Relief Defendants," which consist of Hipgnosis Songs Fund Ltd., Hipgnosis Songs Group, Hipgnosis Songs Group, LLC, and Hipgnosis Funds.

[2]     A magistrate judge may grant a motion to amend by memorandum and order but must issue a report and recommendation to deny a motion to amend. *See, e.g., Xie v. JPMorgan Chase Short-Term Disability Plan,* 15-CV-4546 (LGS) (KHP), 2017 WL 2462675, at *1 (S.D.N.Y. June 6, 2017), *report and recommendation adopted,* 2018 WL 501605 (S.D.N.Y. Jan. 19, 2018).

**BACKGROUND**

**I.     Factual Allegations**

On May 22, 2023, Plaintiffs filed their complaint against Defendants (the "Complaint"), alleging claims for breach of contract, unjust enrichment, conversion, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty, and seeking a declaratory judgment that Defendants breached contracts between them and Plaintiffs, an injunction preventing Relief Defendants from distributing any royalties until the obligations owed to Plaintiffs have been met, imposition of a constructive trust on property in Relief Defendants' possession that is traceable to Defendants' wrongful acts, and an accounting. (*See generally* ECF 1, Compl.) The claims arise out of (1) a contract between Plaintiffs and Defendants that was amended by written agreement on April 11, 2013 (the "Mosley-Harmon Contract"), and (2) a settlement agreement from August 2020 between Plaintiffs and Defendants (the "Settlement Agreement"), which partially resolved a dispute over Defendants' failure to account and pay royalties to Plaintiffs for musical services performed by Plaintiffs for Defendants on certain musical recordings beginning in 2007 (the "Recordings"), as required by the Mosley-Harmon Contract. (*See id.* ¶¶ 35-39.) Defendants transferred their interests in the Recordings, as well as in other recordings, to a corporate affiliate of Relief Defendants, Hipgnosis SFH, in or around 2019 (the "Transfer"). (*See* ECF 1, Compl. ¶ 55; ECF 66, Memo. in Supp. of Mot. for Protective Order at 2.)

II.     **Relevant Procedural History**

    A.     Answer and Initial Case Management Order

Defendants answered the Complaint on October 10, 2023 (ECF 28, 29). Relief Defendants answered the Complaint on November 15, 2023 (ECF 35). Your Honor entered an initial case management order on March 20, 2024, required amended pleadings other than under Rule 15(a)(1) to be filed by May 6, 2024 and required all discovery to be complete by October 31, 2024. (*See* ECF 43). On April 22, 2024, Your Honor referred this case to a magistrate judge for general pretrial supervision (ECF 47).

    B.     Plaintiffs' Efforts To Seek Discovery About the Transfer

On August 16, 2024, Defendants and Relief Defendants filed a motion for a protective order, seeking to prevent Plaintiffs from obtaining discovery about the Transfer. (*See* ECF 64, Mot. for Protective Order; ECF 65, Decl. in Supp. of Mot. for Protective Order; ECF 66, Memo. in Supp. of Mot. for Protective Order.) Defendants and Relief Defendants argued that the "sole issue in the action is whether Plaintiffs are currently due and owed any royalties under the Settlement Agreement, and if so, how much," which can be resolved only "by obtaining and analyzing royalty statements created and maintained by third-party record labels." (ECF 66, Memo. in Supp. of Mot. for Protective Order at 1-2.) Defendants and Relief Defendants took the position that the documents about the Transfer were irrelevant to the claims in the Complaint, particularly because the Mosley-Harmon Contract provides that Defendants may sell their interests in the Recordings at their sole discretion. (*See id.* at 5.)

On August 23, 2024, Plaintiffs filed a memorandum of law in opposition to the motion for a protective order (ECF 68) along with a cross-motion for discovery (ECF 71).[3] Plaintiffs argued that they are "owed semi-annual royalty accounting statements and payment of any royalties due," and that "[i]t appears from the facts of the Hipgnosis sale that Timbaland has tortiously converted [Plaintiffs'] royalties and assets, without notice or granting [Plaintiffs] the opportunity to protect his royalty stream . . . by virtue of Timbaland's sale of the entire royalty stream and all attendant administration rights to Hipgnosis." (ECF 68, Memo. of Law in Opp'n to Mot. for Protective Order at 6-7.)

I held a conference on September 11, 2024, and I ruled that the extremely broad discovery being sought by Plaintiffs was not relevant to the claims in the Complaint and was not proportional to the needs of the case. (*See* ECF 92, Tr. at 25:11-17.) At the conference, Plaintiffs' counsel stated that he anticipated moving to amend the pleadings. (*See id.* at 9:21-24.)  On September 25, 2024, Plaintiffs filed a motion for reconsideration (ECF 86) of my September 11 order and to vacate (ECF 88) my September 11 order, supported by a memorandum of law (ECF 89). In support of their reconsideration motion, Plaintiffs argued that discovery concerning the Transfer is relevant to various questions, including whether Mosley disclosed to Hipgnosis his accounting and payment obligations to Harmon and if so, did Hipgnosis assume those obligations; what representations and warranties Mosley made to Hipgnosis and how do they affect Harmon's rights; whether the portion of the producer income stream that Mosley sold to Hipgnosis included all Harmon's share; whether Hipgnosis did any due diligence as to Mosley's

---

[3] The motion was supported by two declarations (ECF 69, 70); Plaintiffs' cross-motion was supported by two declarations (ECF 73, 74), as well as a memorandum of law (ECF 72).

4

obligations to Harmon and if so, what was the intention between Mosley and Hipgnosis in that regard; and whether the agreement between Hipgnosis and Mosley provided a way for Mosley to get the information necessary to account to Harmon. (*See id.* at 2.)

On October 2, 2024, Defendants and Relief Defendants filed memoranda of law in opposition to the motion for reconsideration (ECF 96) and in opposition to the motion to vacate (ECF 97). Defendants and Relief Defendants explained that the Harmon-Mosley Contract makes clear that Plaintiffs might be entitled to certain royalty payments based on a formula, but that Plaintiffs has no interest in the underlying Recordings and Defendants and Relief Defendants did not dispute that Defendants were obligated to make all royalty payments due under the formula. (*See* ECF 96, Memo. in Opp'n to Recons. Mot. at 8-12.) On November 12, 2024, Plaintiffs requested that the motion to vacate be stayed or held in abeyance pending my determination of their reconsideration motion (ECF 121, 122).

I denied the reconsideration motion (ECF 129). As I explained:

> The core question in this lawsuit is whether and if so to what extent Defendants owe royalty payments to Plaintiffs. Information about the Transfer is not relevant to that question, because the Transfer does not affect Plaintiffs' entitlement to any such payments and Defendants' obligation to make any such payments. Plaintiffs' list of questions intended to demonstrate how the Transfer could be relevant to the issues in this case is unavailing. The questions are largely premised on counsel's speculation about possible bad acts by Defendants, which does not support a conclusion that the requested discovery is relevant . . . .

> [E]ven if Plaintiffs' speculation were to be borne out, discovery about the Transfer would still not be relevant to the claims in this matter. Plaintiffs suggest that Defendants may not have disclosed to Relief Defendants the accounting and payment obligations owed by Defendants to Plaintiffs, may not have retained those obligations, may not have ensured a way for Defendants to meet those obligations, may have sold the producer income streams from which the royalty payments are derived, and may have made representations and warranties to Relief Defendants about Plaintiffs' rights, and that Relief Defendants may not have done due diligence on Defendants' obligations to Plaintiffs. However, Defendants

> have never disputed their obligations to account and pay royalties to Plaintiffs. In the absence of any argument by Defendants that they need not meet their accounting and payment obligations to Plaintiffs, the questions whether Defendants disclosed those obligations to Relief Defendants and whether Relief Defendants performed due diligence on those obligations are not relevant to Plaintiffs' claims. Similarly, Defendants will have to find a way to meet their obligations or compensate Plaintiffs for any failure to do so, notwithstanding the sale of the producer income streams . . . .

(ECF 129, Order.)

      C.      Amendments to the Initial Case Management Order and
               Extensions of Time for Plaintiffs To File Their Motion To Amend

I have granted several extensions of time in this case, both for completing discovery and for Plaintiffs to file their motion to amend. On July 30, 2024, I extended the fact discovery deadline until November 30, 2024 (ECF 60). On October 21, 2024, I granted in part the parties' joint motion to extend discovery deadlines, moving the fact discovery deadline to November 15, 2024 and the expert discovery deadline to December 16, 2024 (ECF 104). On November 18, 2024, I extended the deadline for expert discovery to January 31, 2025 (ECF 128).

In a December 20, 2024 status letter to the Court, over three months after Plaintiffs first raised their intended motion for leave to amend, Plaintiffs again informed the Court that they soon intended to "seek leave to add Hipgnosis SFH I Limited as a Relief Defendant," because they had "ample grounds [ ] to seek leave to amend the Complaint to add Hipgnosis SFH I Limited as a Relief Defendant as well as to add direct causes of action for negligence and gross negligence against Hipgnosis SFH I Limited." (ECF 142, Letter at 1). On January 22, 2025, Plaintiffs filed another letter-motion seeking additional discovery related to the Transfer and stating that they intended to move to amend the Complaint to add Hipgnosis SFH as a

6

defendant and to add a fraudulent inducement claim against the Mosley Defendants and a negligence claim against Hipgnosis SFH (ECF 156).

On January 24, 2025, Plaintiffs filed a letter-motion for extension of time to move for leave to amend the Complaint (ECF 159). I denied the discovery letter-motion but granted Plaintiffs until January 27, 2025 to move to amend the Complaint (ECF 162). On January 26, 2025, Plaintiffs again sought an extension of time to move to amend, which request I granted, allowing them until January 30, 2025 (ECF 169). On January 31, 2025, Plaintiffs sought a further extension of time to move to amend, and I gave them until February 7, 2025 at 5:00 p.m. Eastern to move to amend (ECF 176). Plaintiffs filed their motion to amend at 5:01 p.m. on February 7, 2025 (ECF 177).

## LEGAL STANDARD FOR RULE 15 MOTIONS TO AMEND

As relevant here, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).[4] The Second Circuit has held that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011). Under Rule 15, leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000). "Generally, amendment is treated as futile if the proposed claim could not withstand a motion

---

[4] Unless stated otherwise, this report and recommendation omits internal quotation marks, citations, and quotations from quoted text.

7

to dismiss." *United States ex rel. Hussain v. CDM Smith, Inc.*, No. 14-CV-9107 (JPO), 2018 WL 11217206, at *1 (S.D.N.Y. Jan. 31, 2018).

## LEGAL STANDARD FOR RULE 16 MOTIONS TO AMEND

Notwithstanding Rule 15(a)(2), a court may deny a motion for leave to amend a pleading pursuant to Fed. R. Civ. P. 16(b)(4) if the motion was made "after the deadline set in the scheduling order" and "the moving party has failed to establish good cause." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *accord Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 267 (2d Cir. 2009); *see also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

Even if the filing of a proposed amended complaint would not directly contravene the relevant case management order, permitting a significant amendment after the close of discovery – particularly one that adds new defendants – would likely require the court to "modify" its prior scheduling orders in order to permit additional fact discovery, a request for which the plaintiffs would independently need to establish "good cause" under Rule 16. *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2020 WL 1659849, at *10 (S.D.N.Y. Apr. 3, 2020); *see also Wega v. Ctr. for Disability Rights Inc.*, 395 F. App'x 782, 786 (2d Cir. 2010) (affirming denial of request to extend discovery for lack of good cause shown).

A finding of "good cause" depends on the diligence of the moving party. *Presbyterian Church of Sudan*, 582 F.3d at 267. "The party must show that, despite its having exercised diligence, the applicable deadline [set in the court's scheduling order] could not reasonably have been met." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05-CV-3749 (KMW (DCF), 2009 WL

3467756, at *2 (S.D.N.Y. Oct. 28, 2009). A "party lacks good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Tardif v. City of New York* No. 13-CV-4056 (KMW) (FM), 2016 WL 2343861, at *4 (S.D.N.Y. May 3, 2016).

**DISCUSSION**

I. **Rule 15(a)(2) and Rule 16(b)(4) Apply to Plaintiffs' Motion**

Plaintiffs' motion for leave to amend (ECF 177) was made on February 7, 2025, nine months after the original deadline for seeking leave to amend. (*See* ECF 43, Initial Case Management Order.) I granted Plaintiffs multiple extensions of time to file their motion for leave to amend but did not amend the original case management order to change the deadline for seeking to amend the complaint. The motion for leave to amend was filed after the close of fact discovery, and, if granted, would likely require amendment to the initial case management order, to permit discovery relating to the new claims and to permit the proposed new defendant to participate in discovery on the original claims. I therefore conclude that Rule 16(b)(4), as well as Rule 15(a)(2), applies to Plaintiffs' motion. *See, e.g., Joint Stock Co. Channel One Russia Worldwide,* 2020 WL 1659849, at *10.

II. **Plaintiffs' Motion To Amend Under Rule 16(b)(4) Should Be Denied Because Plaintiffs Fail To Show Good Cause for Their Late Request To Amend**

Plaintiffs have failed to show the requisite good cause for granting an amendment under Rule 16(b)(4). Plaintiffs have not shown and cannot "show that, despite [their] having exercised diligence, the applicable deadline [set in the court's scheduling order] could not reasonably have been met." *Sokol Holdings,* 2009 WL 3467756, at *2. Plaintiffs first stated that

9

they intended to seek leave to amend in September 2024. (*See* ECF 92, Tr. at 9:21-24.) They raised the issue again in a joint status letter in December 2024 (ECF 142). They stated their intention to file a motion for leave to amend yet again on January 22, 2025 (ECF 156). They then sought three separate extensions of time to file their motion, which motions I granted (ECF 162, 169, 176).

While I am prepared to accept that Plaintiffs could not reasonably have filed their motion for leave to amend in May 2024, I am not persuaded that they could not have filed in September 2024, or in December 2024, or in January 2025, or even before the deadline on February 7, 2025. Plaintiffs' explanation for their delay in filing between September 2024 and December 2024 – that they needed additional discovery before they could move for leave to amend (ECF 92, Transcript and Status Conference Hearing at 10:13-17) – does not hold up under scrutiny. Plaintiffs have been aware of the facts underlying a gross negligence claim against Hipgnosis SFH since they filed the Complaint, which alludes to alleged negligence by the Relief Defendants. (*See* ECF 1, Compl. ¶¶ 60-61.) And Plaintiffs assert that all the purportedly fraudulent statements they seek to add in their proposed amended complaint were made to them in 2019 and 2020, years before they filed the Complaint. (*See* ECF 181, Pls.' Memo. In Supp. of Mot. for Leave To Amend at 4.) Indeed, Plaintiffs admit they "already alleged the gist of the claims for fraud and gross negligence . . . in the Complaint," but failed to include "a formal cause of action." (*Id*. at 9.) Where, as here, a party knew or should have known the information on which it bases a proposed amendment at an earlier date, the "party lacks good cause" under Rule 16(b)(4). *Tardif*, 2016 WL 2343861, at *4.

Even if Plaintiffs discovered new information necessary for them to move for leave to amend in December 2024 such that "could not reasonably have met the original deadline laid out in the scheduling order" – and I do not believe they did discover such new information – they are "not excused from exercising reasonable diligence thereafter." *Tardif*, 2016 WL 2343861, at *5. If "delayed discovery prevented a party from discovering facts sufficient to support a cause of action," that party must nevertheless "show that it acted diligently upon learning the new facts." *Mason Tenders District Council of Greater New York,* 318 F.R.D. 28, 37 (S.D.N.Y. 2016).

Plaintiffs provide no valid explanation for the full extent of their delays in filing their motion to amend between December 2024 and February 2025. They provide no explanation at all for the delay between December 2024 and January 2025. While the festive season and December trial preparations might have provided an explanation if the original deadline for moving to amend had passed only recently, given that the deadline had expired seven months earlier, Plaintiffs needed to act quickly to demonstrate appropriate diligence. And only one of the extensions Plaintiffs sought in January 2025 reflected circumstances beyond the control of Plaintiffs' counsel (ECF 171) (a flood at his house).

Under the circumstances, Plaintiff has failed to show the good cause required to justify granting a motion for leave to amend under Rule 16(b)(4) made after the close of fact discovery.

### III. Plaintiffs' Motion To Amend Under Rule 15(a)(2) Should Be Denied

#### A. The Requested Amendment Would Be Prejudicial to Defendants

The motion for leave to amend should be denied for the additional reason that granting it would prejudice Defendants. In determining what constitutes "prejudice," courts consider whether the assertion of the new claim would, among other things, require the defendants to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute. *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010).

Fact discovery in this action ended on January 31, 2025. (*See* ECF 128, Order.) The Second Circuit has "has consistently found prejudice and denied amendments where discovery has already been completed." *Cahill v. O'Donnell*, 75 F. Supp. 2d 264, 279 (S.D.N.Y. 1999); *see also Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (noting that an amendment is prejudicial if it "would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute"); *see also Morgan Art Found. Ltd.,* No. 18-CV-4438 (AT) (BCM), 2021 WL 863264, at *9 (S.D.N.Y. Jan. 22, 2021) (finding that "permitting [the counterclaim plaintiff] to amend . . . would cause significant prejudice because it would require a substantial relitigation of the entire case, including new motions to dismiss; new document requests, interrogatories, and requests for admission; the collection and production of additional documents; new third-party subpoenas; and depositions of additional witnesses," which "is precisely the type of prejudice that warrants denial of a motion to amend under Rule 15(a)(2)"). There is no reason to reach a different outcome here.

    B.    <u>The Requested Amendment Would Be Futile</u>

Plaintiffs' motion for leave to amend should be denied because Plaintiffs have failed to show the required good cause under Rule 16(b)(4) or the necessary absence of prejudice under Rule 15(a)(2). It is not necessary to reach the question whether the proposed amendment would be futile by assessing whether the new claim (and old claims against a new proposed defendant) could survive a motion to dismiss. However, for the sake of completeness, I note that the proposed amendment would be futile for substantially the reasons set forth in Defendants' and Relief Defendants' oppositions to the motion for leave to amend. (*See* ECF 187, Defs.' Opp. to Mot. To Amend at 21-24; ECF 185, Relief Defs.' Opp. to Mot. To Amend at 15-22.)

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Your Honor **DENY** Plaintiff's motion to amend (ECF 177).

DATED:  July 25, 2025
           New York, NY

RESPECTFULLY SUBMITTED,

_____
**ROBYN F. TARNOFSKY**
United States Magistrate Judge

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION

The parties shall have fourteen days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)

and Rule 72(b) of the Federal Rules of Civil Procedure to this Report and recommendation. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Rearden.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985)