UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| LESLIE JEROME HARMON p/k/a "J-ROC," and BRONZ & BRAINZ PRODUCTIONS, INC., : : : Plaintiffs, : v. : : TIMOTHY ZACHARY (ZEDD) MOSLEY p/k/a "MOSLEY" also p/k/a "TIMBALAND," TIMBALAND PRODUCTIONS INC., TIMBALAND PRODUCTIONS, TIMBALAND MUSIC, MOSLEY MUSIC GROUP, and MONO MUSIC GROUP, INC. : : : : : : : Defendants, : and : : HIPNOSIS SONGS FUND LIMITED, HIPGNOSIS SONGS GROUP, and HIPGNOSIS SONGS GROUP, LLC, : : : : Relief Defendants. : | Case No. 23-cv-04225 (JHR) (RFT)  **ORAL ARGUMENT REQUESTED** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
MONO MUSIC GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**

JONATHAN D. DAVIS, P.C.
1 Rockefeller Plaza
Suite 1712
New York, New York 10020
(212) 687-5464

*Attorneys for Defendant Mono Music Group, Inc.*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................1

STATEMENT OF RELEVANT FACTS..........................................................................................2

GOVERNING LEGAL STANDARDS .............................................................................................4

ARGUMENT .......................................................................................................................................4

    POINT I  THE UNJUST ENRICHMENT AND
    CONVERSION CLAIMS ARE TIME-BARRED.................................................................4

    POINT II  PLAINTIFFS CANNOT ESTABLISH
    ANY OF THEIR OTHER CLAIMS AGAINST MONO .........................................................7

        A.    Breach of Contract................................................................................................7

        B.    Breach of the Implied Covenant of Good Faith and Fair Dealing ......................8

        C.    Breach of Fiduciary Duty ....................................................................................9

        D.    The Remaining Claims ......................................................................................10

CONCLUSION ..................................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*,
   819 F. Supp. 1282 (S.D.N.Y. 1993) ......................................................................................... 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................................... 4

*City of Almaty v. Sater*,
   502 F. Supp. 3d 51 (S.D.N.Y. 2020) ......................................................................................... 6

*Crabtree v. Tristar Auto. Grp., Inc.*,
   776 F. Supp. 155 (S.D.N.Y. 1991) ............................................................................................ 8

*Crabtree v. Tristar Auto. Grp., Inc.*,
   776 F. Supp. 155 (S.D.N.Y. 1991) ............................................................................................ 8

*Elavon, Inc. v. Katz*,
   2025 WL 1202075 (2d Cir. Apr. 25, 2025) ............................................................................... 5

*Elledge v. Friberg-Cooper Water Supply Corp.*,
   240 S.W.3d 869 (Tex. 2007) ..................................................................................................... 6

*Glob. Fin. Corp. v. Triarc Corp.*,
   93 N.Y.2d 525 (N.Y. 1999) ....................................................................................................... 5

*Haughton v. Cognisight, LLC*,
   953 F. Supp. 2d 478 (W.D.N.Y. 2013) ................................................................................... 11

*Int'l Customs Assocs., Inc. v. Ford Motor Co.*,
   893 F. Supp. 1251 (S.D.N.Y. 1995) .......................................................................................... 8

*Meregildo v. Diaz*,
   154 A.D.3d 630 (2d Dep't 2017) .............................................................................................. 9

*Middaugh v. Interbank*,
   528 F. Supp. 3d 509 (N.D. Tex. 2021) ..................................................................................... 6

*N. Shipping Funds I, LLC v. Icon Cap. Corp.*,
   921 F. Supp. 2d 94 (S.D.N.Y. 2013) ....................................................................................... 10

*Network Apps, LLC v. AT&T Mobility LLC*,
   2025 WL 1115284 (S.D.N.Y. Apr. 15, 2025) ........................................................................... 5

*Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Trust Co.*,
   585 F. Supp. 3d 540 (S.D.N.Y. 2022),
   aff'd sub nom. *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365 (2d Cir. 2023) .......5

*S.V. v. R.V.*,
   933 S.W.2d 1 (Tex. 1996) ..................................................................................................6

*Salahuddin v. Goord*,
   467 F.3d 263 (2d Cir. 2006) ..............................................................................................4

*Sarafianos v. Shandong Tada Auto-Parking Co.*,
   2015 WL 2198499 (S.D.N.Y. May 8, 2015) ......................................................................9

*Smile Train, Inc. v. Ferris Consulting Corp.*,
   117 A.D.3d 629 (1st Dept. 2014) ......................................................................................9

*Stuart v. Am. Cyanamid Co.*,
   158 F.3d 622 (2d Cir. 1998) ..............................................................................................5

*Toto, Inc. v. Sony Music Entm't*,
   2012 WL 6136365 (S.D.N.Y. Dec. 11, 2012) ....................................................................9

*Wallace Wood Props. v. Wood*,
   117 F. Supp. 3d 493 (S.D.N.Y. 2015) ................................................................................6

*Yukos Cap. S.A.R.L. v. Feldman*,
   977 F.3d 216 (2d Cir. 2020) ............................................................................................10

## **Rules**

Fed. R. Civ. P. 56 ...........................................................................................................*passim*

N.Y. C.P.L.R. § 202 .................................................................................................................4, 5

This memorandum of law is respectfully submitted on behalf of Defendant Mono Music Group, Inc. ("Mono") in support of its motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on all causes of action alleged against Mono in the Complaint (the "Motion").[1]

**PRELIMINARY STATEMENT**

The Complaint reveals that suing Mono was a litigation stunt pursued in hopes of a bigger recovery in a plain vanilla collection case against Plaintiffs' former co-producer Timothy Mosley p/k/a "Timbaland." The record establishes that Mono has nothing to do with this action. This is not even a close call. The Court should grant summary judgment in favor of Mono on all claims.[2]

First, Counts II (Unjust Enrichment) and III (Conversion) should be dismissed because they are time-barred. Plaintiffs knew about the sale of TPI's music catalogue in October 2019—which sale forms the alleged basis for these claims. Because Plaintiff Harmon is a citizen of Texas, and plaintiff Bronz & Brainz Productions, Inc. ("B&B") is incorporated in Texas, the two-year Texas statute of limitations applies to these claims. Plaintiffs failed to sue before October 2021; therefore, these claims have expired.

Second, no genuine issue of fact exists concerning Plaintiffs' other claims against Mono. Counts I (Breach of Contract) and IV (Breach of Implied Covenant of Fair Dealing) fail because Plaintiffs admit that they never entered into any contract with Mono. Count V (Breach of Fiduciary Duty) fails because no special relationship exists between Mono and Plaintiffs under contract or otherwise. And Count VI (declaratory judgment) and Count IX (accounting) fail for the same

---

[1] A copy of the Complaint, filed May 22, 2023 (ECF No. 1), is attached as Exhibit A to the accompanying Declaration of Jonathan D. Davis, dated August 3, 2025 (the "Davis Decl.").

[2] In February 2025, Plaintiffs moved to amend the Complaint to allege, among other things, fraud in the inducement against Mono, Mosley, and TPI. Recently, the Court denied the motion under Fed. R. Civ. P. 15 and 16, on the ground that it was lacking "good cause," was filed out of time, and would cause prejudice to Defendants. ECF No. 244.

1

underlying reasons.

A litigation tactic is not enough to hold Mono as a defendant in this action. There is no merit to any of Plaintiffs' claims. For the reasons stated below, Mono is entitled to summary judgment on all claims alleged against it.[3]

## STATEMENT OF RELEVANT FACTS

This case stems from a May 9, 2007, production agreement between Plaintiff Leslie Jerome Harmon, p/k/a J-Roc, his production company, Side by Side Entertainment, Inc. ("SBS")—now B&B—and Timbaland Productions, Inc. ("TPI"). Davis Decl. at Ex. B (the "Production Agreement"). Mono is neither a party to the Production Agreement, nor to any other contract with Plaintiffs. *See Id.* & Davis Decl. at Ex. C (Plaintiffs' Responses & Objections to Defendants' Requests for Production) at 28–29 ("There is no contract between Mono, on the one hand, and Harmon and/or [B&B], on the other hand"). The Production Agreement was amended on April 11, 2013, extending its term and improving certain terms in Harmon's favor. *Id.* at Ex. D (collectively with the Production Agreement, the "Amended Production Agreement"). Mono is likewise not a party to the amendment. *Id.*

The Amended Production Agreement expressly permitted TPI, in its sole discretion, to sell, transfer, or assign, among other things, the master recordings created under that agreement, as all of Harmon's co-productions thereunder were the exclusive property of TPI. Davis Decl. at Ex. B ¶ 9(a). Plaintiffs lacked any right or entitlement whatsoever to interfere with, participate in, or otherwise affect the sale of those master recordings to any party or to share in any of the profits

---

[3] As the Motion will dismiss Mono from this action, it moots any planned motion by Mosley to disqualify Mono's counsel. That being said, Mosley and Mono were fully aligned and not adverse on any issue in this action. The Motion evidences that fact, as well as Mosley's approval of the joint representation from the inception of the action. Also, Mono is not party to any contract establishing any obligation to Mr. Harmon. *See infra* at 7-8.

2

derived therefrom. *Id.*

At least as early as October 17, 2019, Harmon admittedly knew that Mosley, through TPI, sold to Hipgnosis certain master recordings in which Harmon and others had made creative contributions together with Mosley. At that time, Plaintiffs' lawyer, Bernard Resnick, emailed Merck Mercuriadis at Hipgnosis Songs Group, a Relief Defendant, about the public announcement of the sale of TPI's music catalogue, stating explicitly that "any purchase of Timbaland's royalty stream also necessitates a future obligation to account to and pay back, current and future royalties to my clients [which included Harmon], as Timbaland does not have the right to sell my clients' royalty streams." ECF No. 154-1.

Sometime after the Amended Production Agreement was executed, disputes began to arise between TPI and Harmon and/or SBS regarding the non-payment of producer royalties. Those disputes continued until August 10, 2020, when the parties entered into a written settlement agreement to settle some, but not all, of Plaintiffs' royalty disputes under the Amended Production Agreement. ECF No. 67-1 (the "<u>Settlement Agreement</u>"). Mono is not a party to the Settlement Agreement. *Id.*

The Settlement Agreement contemplated that TPI would spend the next year collecting royalty statements and calculating and then distributing any producer royalties owed to Plaintiffs beyond those already paid under the Settlement Agreement. *Id.* ¶ 3. Mono is not a party to the Production Agreement nor to the Amended Settlement Agreement, and so did not have—and never had—any role or responsibility in the alleged non-payment of producer royalties purportedly owed to Plaintiffs. And yet Plaintiffs sued Mono on their mere say-so, despite no agreement, whether written or otherwise, contractually binding Mono to either Plaintiff.

On May 22, 2023, Harmon and B&B, SBS's successor, commenced this action against

3

Mosley, TPI, and Mono (collectively, "Defendants"), asserting claims including breach of contract, unjust enrichment, conversion, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty. Davis Decl. at Ex. A, ¶¶ 16–17, 62–92. Plaintiffs also sued Hipgnosis and several similarly named companies for multiple claims as "Relief Defendants." *Id.* ¶¶ 69–81, 97–108. Finally, Plaintiffs sought a declaratory judgment that Harmon was the co-creator and joint owner of the master recordings under the Production Agreement, with a right to receive continuing royalties, as well as an accounting of Defendants' financial records related to the recordings. *Id.* ¶¶ 93–96, 109–116.

## GOVERNING LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must provide "affirmative evidence" from which a factfinder could return a verdict in its favor. *Id.* at 257. The "burden [then] shifts to the non-movant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). In assessing the appropriateness of summary judgment, a court views the facts in the light most favorable to the nonmoving party. *See Anhui Joyful Mfg. & Trading Co., Ltd. v. M.I.S.S. Sportswear, Inc.*, 774 F. Supp. 3d 675, 681 (S.D.N.Y. 2025).

## ARGUMENT

### POINT I

### THE UNJUST ENRICHMENT AND CONVERSION CLAIMS ARE TIME-BARRED

"Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York

must apply the New York choice-of-law rules and statutes of limitations." *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998). "New York courts generally apply New York's statutes of limitations, even when the injury giving rise to the action occurred outside New York. *Id.* at 627. But "[t]his general rule … is subject to a traditional statutory exception, New York's 'borrowing' statute, C.P.L.R. § 202." *Id.*

"When a nonresident sues on a cause of action accruing outside New York, [C.P.L.R. § 202] requires the cause of action to be timely under the limitation periods of both New York and the jurisdiction where the cause of action accrued." *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 (N.Y. 1999); *see Elavon, Inc. v. Katz*, 2025 WL 1202075, at *2 (2d Cir. Apr. 25, 2025) (stating that, under C.P.L.R. § 202, "the court must apply the *shorter limitations period*, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued." (quotation omitted)). "The purpose of Section 202 is to prevent forum shopping by time-barred claimants by mandating the use of the *shortest* statute of limitations available." *Network Apps, LLC v. AT&T Mobility LLC*, 2025 WL 1115284, at *17 (S.D.N.Y. Apr. 15, 2025) (quotation omitted).

New York follows "the traditional definition of accrual [that] a cause of action accrues at the time and in the place of the injury." *Glob. Fin. Corp.*, 93 N.Y.2d at 529; *Elavon*, 2025 WL 1202075, at *2. "[A]bsent unusual circumstances, when the injury of a nonresident plaintiff is purely economic, the cause of action accrues *where the plaintiff resides and sustains the economic impact of the loss*, rather than where the defendant committed the wrongful act." *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Trust Co.*, 585 F. Supp. 3d 540, 569 (S.D.N.Y. 2022) (emphasis added), *aff'd sub nom. Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365 (2d Cir. 2023). "If the injured party is a corporation, then the place of residence for the purposes of [C.P.L.R. §

5

202] is traditionally the state of incorporation or the corporation's principal place of business." *Id.*

Harmon resides in Texas and B&B is incorporated under the laws of Texas. Davis Decl. at Ex. A, ¶¶ 7–8. Accordingly, the shorter Texas limitations period applies to the unjust enrichment and conversion claims.[4] In New York, the statute of limitations for conversion is three years. *See Wallace Wood Props. v. Wood*, 117 F. Supp. 3d 493, 497 (S.D.N.Y. 2015). For unjust enrichment, the statute of limitations differs depending on the relief sought—either three or six years. *See City of Almaty v. Sater*, 502 F. Supp. 3d 51, 64–66 (S.D.N.Y. 2020).

In Texas, claims for unjust enrichment and conversion have the same statute of limitations—two years only. *See Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870–71 (Tex. 2007) (per curiam). Therefore, under C.P.L.R. § 202, the Texas two-year limitations period applies to these claims. *See Glob. Fin. Corp.*, 93 N.Y.2d at 528.

The Complaint was filed on May 22, 2023. Thus, to fall within the statute of limitations, Plaintiffs' claims for unjust enrichment and conversion had to accrue no earlier than May 22, 2021. This is well after when each claim actually accrued, and so these claims are time-barred.

Texas uses the "legal injury" test to determine when a cause of action accrues. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). Under the test, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Id.* For conversion, a claim accrues at the time of the unlawful taking. *See Middaugh v. Interbank*, 528 F. Supp. 3d 509, 550 (N.D. Tex. 2021). For unjust enrichment, because the allegations underpinning it are the same as Plaintiffs' conversion claim,

---

[4] Because the claims for breach of contract, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and declaratory judgment arise under the Production Agreement and Settlement Agreement, the choice of law provisions in those agreements control.

6

the two claims share the same accrual date. *See id.* at 552–53.

While Plaintiffs' claims for unjust enrichment and conversion likely accrued much earlier, the latest the claims could have possibly accrued was October 2019. By that date, Mosley consummated the sale to Hipgnosis in which entities associated with the Relief Defendants purchased TPI's master recordings—including co-productions Harmon created with Mosley and other contributors under the Amended Production Agreement.

Plaintiffs contemporaneously learned about the Hipgnosis purchase in the music "trades" and recognized the potential implications to Plaintiffs' continued receipt of co-producer royalties. For example, on October 17, 2019, lawyer Resnick contacted Mr. Mercuriadas at Hipgnosis Songs, a Relief Defendant, regarding the public announcement of the purchase of Mosley's music catalogue, stating explicitly that such sale must not impact Harmon's and his other clients' entitlement to be accounted and paid current and future royalties. Davis Decl. at Ex. B.

Based on Mr. Resnick's email, Plaintiffs undeniably had actual knowledge of their purported claims for unjust enrichment and conversion no later than October 19, 2019, when Mr. Resnick emailed Mr. Mercuriadis to apprise him of Harmon's claimed interest in the Hipgnosis sale. Because Plaintiffs' claims for unjust enrichment and conversion accrued no later than October 19, 2019, Plaintiffs' failure to sue Mono for those claims on or before October 19, 2021 bars them under Texas's two-year statute of limitations. Accordingly, Mono is entitled to summary judgment for the unjust enrichment and conversion claims.

## POINT II

## PLAINTIFFS CANNOT ESTABLISH ANY OF THEIR OTHER CLAIMS AGAINST MONO

### A. Breach of Contract

"[A] contract claim cannot bind a non-party." *Int'l Customs Assocs., Inc. v. Ford Motor*

*Co.*, 893 F. Supp. 1251, 1255 (S.D.N.Y. 1995); *see Crabtree v. Tristar Auto. Grp., Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991) ("It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." *Crabtree v. Tristar Auto. Grp., Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991).

Here, Plaintiffs concede that Mono lacked any contractual relationship with Plaintiffs. Davis Decl. at Ex. C (Plaintiffs' Responses & Objections to Defendants' Requests. for Production at 28–29) ("There is no contract between Mono, on the one hand, and Harmon and/or [B&B], on the other hand"). And it is incontestable that Mono only began working with Mosley in mid-2016. Davis Decl. at Ex. E (Marella Tr. at 109:6–109:16). Mono thus had no knowledge of, or involvement with, the Amended Production Agreement, which predates the inception of Mono's work with TPI and Mosley. No evidence has been adduced that Mono assumed any obligation under the Production Agreement, or that TPI assigned to Mono the Production Agreement, in whole or in part. Mono also was neither a signatory nor a party to the Settlement Agreement. And like the Amended Production Agreement, there is no evidence that Mono assumed any obligation under that agreement.

In sum, there is no genuine issue of material fact that no contract ever existed between Plaintiffs and Mono. Therefore, Plaintiffs have no basis to assert a breach of contract claim against nonparty Mono. Accordingly, Mono is entitled to summary judgment on this claim.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Like Plaintiffs' breach of contract claim, Mono is not a proper party for a claim alleging breach of the implied duty of good faith and fair dealing because Mono was not a party to the Amended Production Agreement nor to the Settlement Agreement. "In New York, it is well-settled

that the common law duty of good faith and fair dealing exists solely as an implicit contractual right; any breach of this duty is therefore considered *a breach of the underlying contract.*" *Toto, Inc. v. Sony Music Entm't*, No. 12 Civ. 1434, 2012 WL 6136365, at *13 (S.D.N.Y. Dec. 11, 2012) (emphasis added); *see also Meregildo v. Diaz*, 154 A.D.3d 630, 631 (2d Dep't 2017) ("[A] breach of good faith claim is not viable in the absence of a valid contract."); *Sarafianos v. Shandong Tada Auto-Parking Co.*, 2015 WL 2198499, at *3 (S.D.N.Y. May 8, 2015) ("In the absence of a valid and binding contract, [a party] cannot seek damages for breach of the implied covenant of good faith and fair dealing."); *Smile Train, Inc. v. Ferris Consulting Corp.*, 117 A.D.3d 629, 630 (1st Dept. 2014) ("[B]reach of the implied covenant of good faith and fair dealing is not a tort; rather, it is a contract claim." (citation and quotation omitted)).

As Plaintiffs never entered into any contract with Mono, they have no claim against Mono for breach of contract or the implied duty of good faith and fair dealing. Under New York law, the latter claim "may not be used as a substitute for a nonviable claim of breach of contract." *Sheth v. N.Y. Life Ins. Co.*, 273 A.D.2d 72, 73 (1st Dept. 2000) (citation and quotation omitted). But that is exactly what Plaintiffs have attempted to do here, tying their claim for breach of the implied duty of good faith and fair dealing to the Amended Production Agreement and the Settlement Agreement, to which Mono is not a party. Davis Decl. at Ex. A, ¶¶ 82–86. Therefore, as a matter of law, Plaintiffs' claim for breach of the implied duty of good faith and fair dealing against Mono cannot survive summary judgment.

### C. Breach of Fiduciary Duty

"To state a cause of action to recover damages for breach of fiduciary duty, a plaintiff must allege: '(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Yukos Cap. S.A.R.L. v. Feldman*, 977

9

F.3d 216, 241 (2d Cir. 2020) (quotation omitted). Here, Plaintiffs have failed to establish a fiduciary relationship with Mono because no facts have been pled or proven to create one. Indeed, no contract exists between them for anything.

The sole alleged basis for the existence of a fiduciary relationship is that TPI "received royalties, advances and other fees from recording companies on behalf of Plaintiffs." Davis Decl. at Ex. A ¶ 89. This bare allegation is grossly insufficient to establish a fiduciary duty between Mono and Plaintiffs. Indeed, this is nothing more than an attempt to recast the contractual arrangement Plaintiffs agreed to with TPI under the Amended Production Agreement—where TPI would receive monies and then pay Plaintiffs their allocable share—as a fiduciary relationship, which it is not. "[N]o fiduciary duties arise where parties deal at arm's length in conventional business transactions." *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94, 104 (S.D.N.Y. 2013) (quotation omitted). And no fiduciary duty can exist between parties to a contract "unless one was created in the agreement." *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 819 F. Supp. 1282, 1296 (S.D.N.Y. 1993) (quotation omitted).

Mono is not a party to any contract with plaintiffs, and none of the agreements implicated here make any reference to a fiduciary relationship. Again, Mono is not a party to the Production Agreement, the Settlement Agreement, or any other contract with Plaintiffs. Davis Decl. at Ex. C at 28–29. Accordingly, no fiduciary duties exist between the parties, entitling Mono to summary judgment on this claim. *See Banque Arabe*, 819 F. Supp. at 1296.

### D. The Remaining Claims

As demonstrated above, Plaintiffs lack any cause of action against Mono for any contract-based claim or based on a breach of fiduciary duty. And Mono has no interest under the Amended Production Agreement. Therefore, a declaratory judgment claim cannot lie against Mono to

compel it to pay Plaintiffs royalties under the Amended Production Agreement. Nor can Plaintiffs pursue an equitable accounting claim because, among other things, no fiduciary duty exists between Plaintiffs and Mono, and because Plaintiffs have an adequate remedy at law. *See Haughton v. Cognisight, LLC*, 953 F. Supp. 2d 478, 491 (W.D.N.Y. 2013) (an accounting claim requires "(1) a fiduciary relationship with defendants (2) involving the entrustment of money or property, (3) that no other remedy exists, and (4) that plaintiff demanded and was refused an accounting").

## **CONCLUSION**

For the foregoing reasons, Mono is entitled to summary judgment on all claims alleged in the Complaint, together with such other and further relief as the Court deems just and proper.

Dated: August 3, 2025
       New York, New York

JONATHAN D. DAVIS, P.C.

By:   */s/ Jonathan D. Davis*
      Jonathan D. Davis
      Colin J. Steelsmith
      David C. Russell
      1 Rockefeller Plaza, Suite 1712
      New York, New York 10020
      (212) 687-5464
      jdd@jddavispc.com
      cjs@jddavispc.com
      dcr@jddavispc.com

      *Attorneys for Defendant*
      *Mono Music Group, Inc.*